James P. Keenley (State Bar No. 253106)
Brian H. Kim (State Bar No. 215492)
Emily A. Bolt (State Bar No. 253109)
BOLT KEENLEY KIM LLP
1010 Grayson Street, Suite Three
Berkeley, California 94710
Phone: (510) 225-0696
Fax: (510) 225-1095

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| John DOE<br><br>        Plaintiff,<br><br>v.<br><br>Prudential Insurance Company of America; WME Employee Welfare Benefit Plan<br><br>        Defendants. | Case No.: 2:15-cv-04089-AB-FFM<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ENTRY OF JUDGMENT, AWARD OF BENEFITS, PREJUDGMENT INTERST, ATTORNEY'S FEES AND COSTS OF SUIT**<br><br>**Date/Time:** July 10, 10:00 AM<br>**Location:** Los Angeles, 350 West First Street<br>**Courtroom:** 7B<br>**Judge:** Hon. André Birotte, Jr. |

PLEASE TAKE NOTICE THAT on July 10, 2017, at 10:00 A.M. Plaintiff will and hereby does move the Court to enter judgment pursuant to Federal Rule of Civil Procedure 58(d) on his claim for benefits under section 502(a)(1)(B) of the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B). Plaintiff's motion further seeks and order from the Court requiring Defendant Prudential Insurance Company of

CASE NO. 2:15-cv-04089-AB-FFM      i      PLTF'S MTN. FOR ENTRY OF JUDGMENT; AWARD OF BENEFITS, INTEREST, ATTORNEY'S FEES & COSTS

America to pay past-due benefits, pre-judgment interest, and reasonable attorney's fees and costs of suit.

This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of James P. Keenley filed herewith, the entire Court file in this action, and such evidence and argument as may be presented to the Court at the July 10, 2017 hearing.

Respectfully Submitted,

By:   /s/ James P. Keenley
        James P. Keenley
        Bolt Keenley Kim LLP
        Attorneys for Plaintiff

## MEMORANDUM OF POINS AND AUTHORITIES

## TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................................1

II.   STATEMENT OF FACTS ...................................................................................1

    A.    Procedural History......................................................................................1

    B.    Calculation of Mr. Doe's Benefits ............................................................2

    C.    Plaintiff Lost Income as a Result of Prudential's Unlawful Actions....................3

    D.    Prudential Has Received a Windfall by Withholding Mr. Doe's Benefits ............4

    E.    Plaintiff's Lodestar Attorney's Fees ........................................................4

    F.  Plaintiff's Recoverable Costs .....................................................................5

III.   ARGUMENT.......................................................................................................5

    A.    Legal Standard on a Motion for Fees and Costs Under ERISA § 502(g)..............5

    B.    The Hummell Factors Support a Fee Award................................................7

        1.    Degree of Culpability or Bad Faith.................................................7

        2.    Ability of Defendant to Satisfy a Fee Award....................................7

        3.    A Fee Award Will Deter Similar Conduct in the Future .................8

        4.    The Case Will Benefit Other Disabled Plan Participants .................8

        5.    The Relative Merits of the Parties' Positions..................................9

    C.    The Requested Fees and Costs Are Reasonable .......................................9

        1.    The Rates Charged by Plaintiff's Counsel are Reasonable ...........10

        2.    The Hours Expended Were Reasonable and Necessary .................13

    D.    Plaintiff Is Entitled to Recover His Net Benefit Due........................................15

E.    Prejudgment Interest Should Be Awarded............................................................15

F.  Plaintiff's Entitlement to Future Benefits .............................................................17

G.    Request for Entry of Judgment..............................................................................18

IV.   CONCLUSION ...............................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Abatie v. Alta Health & Life Ins. Co.* ¸458 F.3d 955 (9th Cir. 2006) ..............................12

*Allison v. Bank One-Denver*, 289 F.3d 1223 (10th Cir. 2002) .........................................17

*Arnett v. Hartford Life and Acc. Ins. Co.*, 2006 WL 5781982 (C.D. Cal. Dec. 19, 2006) .......................................................................................................................................17

*Barling v. UEBT Retiree Health Plan*, Case No. 14-cv-04530-VC, Final Order Approving Payment of Fees and Costs to Class Counsel ............................................10

*Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620 (9th Cir. 2007).............15

*Blum v. Stenson*, 465 U.S. 886 (1984) ...............................................................................10

*Boston Mut. Ins. v. Murphee*, 242 F.3d 899 (9th Cir. 2001)................................................6

*Caplan v. CNA Financial Corp.*, 573 F.Supp.2d 1244 (N.D. Cal. 2008)....................7, 8, 9

*Carpenters Southern Californian Admin. Corp. v. Russell*, 726 F.2d 1410 (9th Cir. 1984) ...........................................................................................................................8

*D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379 (9th Cir. 1990)..............10

*Dragu v. Motion Picture Industry Health Plan for Active Participants*, 159 F. Supp. 3d 1121 (N.D. Cal. 2016) .......................................................................................10, 11

*Echauge v. Metropolitan Life Ins. Co.*, 69 F. Supp. 3d 990 (N.D. Cal. 2014) ...........13, 14

*Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154 (9th Cir. 2001)..................15

*Hansen v. Continental Ins. Co.*, 940 F.2d 971 (5th Cir. 1991)........................................17

*Heimeshoff v. Hartford Life & acc. Ins. Co.*, 134 S. Ct. 604 (2013)..................................8

*Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir. 1980) ..............................6, 7, 8, 9

*King v. Cigna Corp.*, 2007 WL 4365504 (N.D. Cal. Dec. 13, 2007) ..................................7

*Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985)....................................8

*McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129 (9th Cir. 1996) .....................................9

*McElwaine v. U.S. West, Inc.*, 176 F.3d 1167 (9th Cir. 1999) ...........................................6

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008)........................................14

*Nightingale v. Blue Cross/BlueShield of Ala.*, 41 F.3d 1476 (11th Cir. 1995).................17

*Oster v. Standard Ins. Co.*, 768 F. Supp. 2d 1026 (N.D. Cal. 2011) ...............................13

*Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017 (4th Cir. 1993) ..........................17

*Radford Trust v. First Unum Life Ins. Co. of Am.*, 321 F.Supp.2d 226 (D.Mass.2004) ..17

*Salovaara v. Eckert*, 222 F.3d 19 (2d Cir. 2000)................................................................7

*Smith v. American Int'l Life Assur. Co. Of N.Y.*, 50 F.3d 956 (11th Cir. 1995) ...............17

*United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1980) .10

**Statutes**

California Insurance Code § 10111.2 ...............................................................................16

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ................................................. i, 1, 18

## I.   INTRODUCTION

This case challenges the Prudential Insurance Company of America's ("Prudential" or "Defendant") decision to terminate the long-term disability insurance benefits due to Plaintiff John Doe under the terms of the WME Employee Welfare Benefit Plan ("the Plan").

On March 27, 2017, the Court entered findings of fact and conclusions of law following the November 29, 2016 bench trial.  ECF No. 89.  Those findings were fully in Plaintiff John Doe's favor, awarding him judgment on his claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

Plaintiff now seeks entry of judgment in the proposed form filed concurrently herewith, which includes an award of past-due benefits with interest thereon, and an order reinstating his monthly benefit payments until such time that he reaches the maximum age under the plan, an order requiring Defendant to refrain from further invasive medical inquiry into the cause of Mr. Doe's disability, and an award of attorney's fees and costs of suit.

## II.   STATEMENT OF FACTS

### A. Procedural History

This case traces its origin to the summer of 2013, when Defendant announced that it was terminating Mr. Doe's ongoing long-term disability benefits on the basis that Mr. Doe's disability was caused by a mental health illness.  ECF No. 1 at ¶ 21.  Mr. Doe challenged this determination in two internal appeal processes by presenting evidence that the primary cause of his disability was cognitive impairment caused by HIV and that this, combined with the other deleterious effects of HIV, made it impossible for him to perform the material duties of his former job as a talent agent and executive. ECF No. 1 at ¶ 28.  When Prudential failed to overturn its decision in response to these appeals, Mr. Doe initiated this litigation to recover his benefits.  ECF No. 1.

Prudential vigorously contested liability in this case and has pursued all possible

CASE NO. 2:15-cv-04089-AB-FFM                    1                    PLTF'S MTN. FOR ENTRY OF
JUDGMENT; AWARD OF BENEFITS,
INTEREST, ATTORNEY'S FEES & COSTS

lines of defense, including a contemplated post-judgment "motion for clarification" that seeks to limit Plaintiff's remedies. The parties pursued a private mediation in January 2016, but the case did not resolve. Declaration of James P. Keenley at ¶ 2. After the mediation, the parties pursued substantial formal discovery in which Plaintiff took the depositions of Prudential's two neuropsychiatric experts and Prudential took the deposition of two of Mr. Doe's treating physicians and his neuropsychologist. Keenley Dec. at ¶ 2.

In addition to the substantial discovery, Prudential insisted on defending its position that the standard of review in this case should be for abuse of discretion despite California's statutory ban on policy terms conferring such authority. This dispute necessitated additional motion practice to resolve the standard of review before trial. ECF Nos. 48-57. On October 21, 2016, the parties submitted cross motions for judgment. ECF Nos. 62, 64. The motions are factually and legally complex, the evidence submitted in connection with these motions wan into the thousands of pages, and included the analysis of three separate neuropsychological experts.

On November 29, 2016, the Court held a bench trial at which the parties presented argument and evidence on the many factual and legal issues in the case. ECF No. 85. On March 27, 2017, the Court issued its findings of fact and conclusions of law, which were fully in Plaintiff's favor and ordered Prudential to pay Mr. Doe his past-due benefits with interest thereon and to resume payment of his monthly disability benefits. ECF No. 89 at 30. As of this filing, nearly three months after the Court's order, Prudential has made no attempt to comply with either instruction.

## B. Calculation of Mr. Doe's Benefits

Under the Court's order, Plaintiff is entitled to payment of past-due benefits. Plaintiff gave Defendant a calculation of the past-due benefits he believed were due and requested that this amount be paid, but no benefits have been forthcoming. Keenley Dec. at ¶ 2.

Mr. Doe is entitled to the maximum benefit payable under the plan ($25,000/month) less the value of his Social Security Disability Insurance benefits ($2,668/month) for a net monthly benefit of $22,332.00.  Keenley Dec. at ¶ 3.  The time period that is past due as of the hearing date on this motion is July 11, 2013 through July 20, 2017, a period of 48 months.  Keenley Dec. at ¶ 3.  The total benefits due for this period is $1,071,936.  Keenley Dec. at ¶ 3.

### C. Plaintiff Lost Income as a Result of Prudential's Unlawful Actions

Prudential's denial of Plaintiff's claim came in July 2013 and has persisted through a period of sustained stock market growth and high returns on all manner of equity investments.  Plaintiff has invested substantial assets in a relatively high risk high reward equity portfolio and a family investment fund that seeks out private placement, venture capital, and distressed debt opportunities.  Doe Dec. at ¶ 2.  Mr. Doe's long-term disability benefit provided for most of his day-to-day needs for cash to pay for food, shelter, medical care, and other routine expenses.  Doe Dec. at ¶ 3.  After his benefits were cut off in July 2013, Plaintiff was forced to rely on savings to meet his day-to-day needs, and as a result he needed to retool his investment strategy so as to preserve funds in cash and low-risk, cash-equivalent type investments.  Doe Dec. at ¶ 4.

This investment strategy caused Mr. Doe to invest less money than he otherwise would have in the higher risk portions of his portfolio.  Doe Dec. at ¶ 5.  Mr. Doe's assets are primarily divided between funds invested with an investment manager (SB Captial Management, Inc.) and a family investment fund called Godzilla B Investments.  Doe Dec. at ¶ 5; Declaration of Richard Singer at ¶¶ 3, 4; Declaration of Adam Berman at ¶¶ 4, 5.

For the period from July 2013 to the present Mr. Doe's equity portfolio at SB Capital Management has yielded an approximate average annual return of 11.54%.  Singer Dec. at ¶ 4.  Mr. Doe's family investment fund, Godzilla B, has returned an approximate annual return of 11.25% during this period.  Berman Dec. at ¶ 3.

**D. Prudential Has Received a Windfall by Withholding Mr. Doe's Benefits**

Between July 26, 2013 and the present, Prudential has withheld over a million dollars in benefits from Mr. Doe, and as a result has been able to use these funds as part of its own portfolio of equity investments. The past four years have been very good years for Prudential's equity portfolio, which, according to Prudential's public annual reports has resulted in Prudential earning an average annual return on equity of 14.75% during this time period: 17.7% in 2013, 14.8% in 2014, 14.5% in 2015, and 12.0% in 2016. Keenley Dec. at ¶¶ 4-6.

**E.  Plaintiff's Lodestar Attorney's Fees**

Plaintiff's counsel maintains contemporaneous time records in a computer-based timekeeping system called Freshbooks. Keenley Dec. at ¶ 11. These records include the date of the work, identify the client and the specific high-level project (e.g., litigation) to which the time was billed, identify general category of the primary task performed (e.g., "Draft Documents"), include a detailed description of the specific work done in connection with each task, and record the time spent on the work, which is rounded to the nearest .05 hour. Keenley Dec. at ¶ 11.

As of June 11, 2017, counsel's time keeping records show a total of 500.5 hours spread across three attorneys. Keenley Dec. at ¶ 12, Exh. 3. James Keenley, lead counsel for Plaintiff, is responsible for the bulk of this time: 469.90 hours. Keenley Dec. at ¶ 12, Exh. 3. Emily Bolt and Brian Kim, Mr. Keenley's partners, spent 16.20 and 14.40 hours respectively. Keenley Dec. at ¶ 12, Exh. 3.

Plaintiff's law firm sets and evaluates rates on an annual basis. Counsel's current rates for Mr. Keenley, Mr. Kim, and Ms. Bolt are $650 per hour. Keenley Dec. at ¶ 10. This rate is consistent with the market rates for ERISA specialists with similar experience and skill in California. Declaration of Glenn R. Kantor (Kantor Dec.) at ¶¶ 8, 11-14; Declaration of Michelle Roberts Bartolic (Bartolic Dec.) at ¶¶ 12-16; Declaration of Ronald Dean (Dean Dec.) at ¶ 13; Declaration of Daniel Feinberg ("Feinberg Dec.")

at ¶¶ 8-12.  Bolt Keenley Kim LLP performs work on both an hourly and contingent fee basis and has multiple current clients paying $650 per hour for representation in ERISA matters.  Keenley Dec. at ¶ 10.

The total value of the attorney time spent by Plaintiff's counsel through June 11, 2017 is $325,325.00.  Keenley Dec. at ¶ 13.  Plaintiff anticipates that an additional 30 - 40 hours will be necessary between June 9, 2017 and the close of this case to finalize this motion, to oppose Defendant's anticipated motion, prepare a reply brief in support of this motion, and to prepare for a hearing on this motion, among other tasks.  Keenley Dec. at ¶ 14.  Counsel will provide an update on the actual time recorded for this work with Plaintiff's reply brief.  Plaintiff's conservative estimate is that the total time spent on the case will come to 530.50 hours by the time the case is completely finished at the trial court, which corresponds to a fee award of $344,825.

### F.  Plaintiff's Recoverable Costs

Plaintiff has incurred substantial costs to pursue this case on discovery, travel, document production and other matters necessary to prosecute the litigation.  The total recoverable amount is $36,147.02.  Keenley Dec. at ¶ 15.  A detailed accounting of the individual line items is attached to the Keenley Declaration as Exhibit 4.

## III.  ARGUMENT

Mr. Doe obtained complete success in his case and he is therefore entitled to recover attorney's fees, costs of suit, an award of benefits and prejudgment interest thereon.

### A. Legal Standard on a Motion for Fees and Costs Under ERISA § 502(g)

Section 502(g)(1) of ERISA gives the court discretion to award attorney's fees.  29 U.S.C. § 1132(g)(1).  The Supreme Court has recently held that a fee claimant is entitled to attorney's fees "if the court can fairly call the outcome of the litigation some success on the merits." *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 255-56 (2010).  Obtaining a judicial order finding that the defendant has abused its discretion

and ordering reconsideration of the claim for benefits is a significant success on the merits of an ERISA claim. *Id.* at 256.

In the case of a prevailing plan participant such as Plaintiff, the Ninth Circuit has held that she "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589; *see also Boston Mut. Ins. v. Murphee*, 242 F.3d 899, 904 (9th Cir. 2001) ("We ordinarily grant a prevailing beneficiary in an ERISA action reasonable attorneys' fees and costs, absent special circumstances cautioning against it.") This is because ERISA "is remedial legislation which should be liberally construed in favor of protecting participants in employee benefit plans" and, specifically, "to afford them effective access to federal courts." *Smith*, 746 F.2d at 589.

In some cases, courts also note that the decision whether to grant attorney's fees and costs is guided by the consideration of five factors set forth by the Ninth Circuit in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980). Courts have consistently construed the *Hummell* factors in favor of prevailing plan participants in employee benefit plans. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999) ("When we apply the *Hummell* factors, we must keep at the forefront ERISA's purposes that 'should be liberally construed in favor of protecting participants in employee benefit plans").[1]

---

[1] While the *Hummell* factors strongly support an award of fees in this case, it should be noted that in *Hardt* the Supreme Court cast significant doubt on whether the five-factor *Hummell* test and other similar precedents in other circuits provided the proper framework for this question: "Consistent with Circuit precedent, the District Court applied five factors to guide its discretion in deciding whether to award attorney's fees under § 1132(g)(1). . . . Because these five factors bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section." *Hardt*, 560 U.S. at 254-55. Thus, analysis of the *Hummell* factors is no longer a requirement for the Court's discretion, but perhaps remain viable as a guide for the Court's exercise of discretion.

**B. The *Hummell* Factors Support a Fee Award**

To the extent that the Court uses the *Hummell* factors to guide its exercise of discretion over the fee award, those factors strongly support Plaintiff's request. The factors are: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Hummell*, 643 F.2d at 453.

**1. Degree of Culpability or Bad Faith**

Defendant is culpable for the denial of benefits because it did not comply with the Plan terms requiring payment of benefits to disabled participants and wrongly categorized Plaintiff's disability as psychiatric in the face of evidence from its own expert that his cognitive problems were physical in nature. Prudential therefore violated a legal duty owed to Plaintiff under ERISA. A losing defendant in an ERISA case is generally regarded as culpable for their conduct because a "losing defendant must have violated ERISA, thereby depriving plaintiffs of rights under a [benefit] plan and violating a Congressional mandate." *Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir. 2000). Other courts have consistently held that ERISA defendants are culpable when they are found to have failed to fulfill a legal duty owed to the Plaintiff. *See, e.g., King v. Cigna Corp.*, 2007 WL 4365504, *2 (N.D. Cal. Dec. 13, 2007) ("[F]rom a legal perspective, Defendants are 'culpable' in that they were found to owe Plaintiff a legal duty that they were not fulfilling"); *Caplan v. CNA Financial Corp.*, 573 F.Supp.2d 1244, 1248 (N.D. Cal. 2008) (same).

Accordingly, the first *Hummel* factor supports an award of fees.

**2. Ability of Defendant to Satisfy a Fee Award**

Prudential is a gigantic transnational financial concern that unquestionably has the

CASE NO. 2:15-cv-04089-AB-FFM          7          PLTF'S MTN. FOR ENTRY OF
                                                   JUDGMENT; AWARD OF BENEFITS,
                                                   INTEREST, ATTORNEY'S FEES & COSTS

ability to satisfy the fee award sought in this case – in 2016 alone the company realized total operating income of $5.3 billion.  Keenley Dec., Exh. 1 at 6.

### 3.  A Fee Award Will Deter Similar Conduct in the Future

Unlike traditional tort claims under state law, ERISA does not provide any type of exemplary or punitive damages remedy to deter bad faith conduct.  *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985) (holding compensatory and punitive damages not available remedies for ERISA benefit claims). Thus, attorney fee awards pursuant to 29 U.S.C. § 1132(g) are regarded as an essential mechanism for deterring future violations of ERISA.  *See Caplan*, 573 F.Supp.2d at 1248 (an "award of attorneys' fees could serve to deter other plan administrators from denying meritorious disability claims" which "could indirectly benefit other individuals"); *Carpenters Southern Californian Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984) (an attorney's fees award to a prevailing plaintiff provides "added incentive to comply with ERISA").

Here a fee award will deter Prudential and other disability insurers from unreasonably applying mental health illness limitation terms to physical disabilities.

### 4.  The Case Will Benefit Other Disabled Plan Participants

The fourth *Hummell* factor, whether the relief sought benefits other participants or resolves a significant legal question regarding ERISA, also favors an award of fees. First, the Court's ruling on Plaintiff's motion for partial summary judgment, which addressed the standard of review, joined a growing body of jurisprudence on California Insurance Code § 10110.6 and will provide guidance for courts in California and around the country on important ERISA questions of general concern, such as whether statutes regulating the practice of giving insurance companies discretionary authority are preempted and whether it is possible to evade such statutes by inserting the offending language in a document other than the policy.

Additionally, the Court's ruling on the cross motions for judgment, which will be

CASE NO. 2:15-cv-04089-AB-FFM                8                PLTF'S MTN. FOR ENTRY OF
JUDGMENT; AWARD OF BENEFITS,
INTEREST, ATTORNEY'S FEES & COSTS

published in the federal supplement, will provide Prudential (one of the biggest disability insurers in the country) and other insurance, with important guidance on HIV associated cognitive disease, which is a growing problem as the HIV-positive population ages. This result would not have been obtained without Mr. Doe's challenge of the claim denial in court and the efforts of counsel in prosecuting that case to judgment.

### 5. The Relative Merits of the Parties' Positions

Plaintiff obtained a judgment in his favor on the central claim in his case: her claim for benefits under the disability plan, and an important ruling on the standard of review, the only other major dispute in the litigation. Thus, there is no question that the fifth *Hummell* factor, the relative merits of the parties' positions, supports a fee award. This factor does not require a plaintiff to prevail on every single issue in the litigation, instead a participant is entitled to fees under this factor if she "succeeds on *any significant issue* in litigation which achieves *some of the benefit sought* in bringing suit and if no special circumstances make an award unjust." *McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129, 1136 (9th Cir. 1996) (internal quotation omitted) (emphasis added). Even when the plaintiff does not prevail on some claims for relief (which is not the case here), any success on some significant aspect of the case supports a fee award under these factors. *See Caplan*, 573 F. Supp. 2d at 1248 (the "failure to prevail on one claim" does not "justify the outright denial of fees").

Plaintiff has obtained complete success on his claim for relief. The only issue that Plaintiff did not prevail on was his request that the Court place the burden of proof on Prudential, but this ultimately did not matter to the outcome of the litigation. Thus the fifth and final *Hummell* factor supports a fee award.

### C. The Requested Fees and Costs Are Reasonable

Under ERISA, the attorneys' fees awarded to a prevailing plaintiff are determined by a lodestar analysis, multiplying the number of hours reasonably expended on the matter by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983);

*D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990). As shown below, the hours expended by Plaintiff's attorneys in this litigation were reasonable, and the requested rates have been approved as reasonable by multiple courts in this District are the prevailing market rates for ERISA specialists in the San Francisco Bay Area for attorneys with their experience and qualifications.

### 1. The Rates Charged by Plaintiff's Counsel are Reasonable

The "reasonable hourly rate" is calculated "according to the prevailing market rates in the relevant community . . . ." *Blum v. Stenson*, 465 U.S. 886, 896-96 (1984). "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community. . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1980). In the absence of opposing evidence, the proposed rates are presumed reasonable. *Id.*

Plaintiff seeks $650 per hour for the three attorneys involved in this litigation. This rate is a modest increase on rates that were found reasonable by two courts in California year, in cases where the bulk of the work was performed in 2014 and 2015. *Dragu v. Motion Picture Industry Health Plan for Active Participants*, 159 F. Supp. 3d 1121 (N.D. Cal. 2016); *Barling v. UEBT Retiree Health Plan*, Case No. 14-cv-04530-VC, Final Order Approving Payment of Fees and Costs to Class Counsel, at ¶ 6, (June 23, 2016) (the fees approved by the court in this case were justified using counsel's lodestar fees at $600 per hour) (Keenley Dec. at ¶ 16, Exh. 5.).

ERISA litigation is a highly specialized area of practice with a small community of specialist attorneys who have the requisite expertise and skill to successfully handle these matters on behalf of plaintiffs. Kantor Dec. at ¶¶ 10-14; Bartolic Dec. at ¶¶ 12-16; Keenley Dec. at ¶ 17; Dean Dec. at ¶¶ 8-12. Bolt Keenley Kim, LLP is recognized as one of the leading plaintiff's side ERISA litigation firms in the San Francisco Bay Area. Feinberg Dec. at ¶¶ 9-12; Dean Dec. at ¶ 13; Kantor Dec. at ¶¶ 10-14; Roberts Dec. at ¶¶ 13-15.

Mr. Keenley, the lead attorney on this case, has specialized in ERISA litigation for his entire career, his work has resulted in numerous published decisions, and is recognized by other prominent members of the ERISA plaintiff's bar as an expert in ERISA litigation whose work is of the highest quality. Keenley Dec. at ¶¶ 11-13, Kantor Dec. at ¶¶ 11-12; Bartolic Dec. at ¶¶ 13-14; Feinberg Dec. at ¶ 10. The quality of Mr. Keenley's advocacy work has been specifically commended by Judge Richard Seeborg of the Northern District of California: "Plaintiff Elise Dragu's attorney, James Keenley, helped his client significantly. He pressed Dragu's claims and achieved enviable success. As a result of Keenley's efforts, Dragu obtained all the relief she requested. . . . Keenley achieved more than 'some degree of success' for his client; he was completely successful. He therefore deserves to be paid." *Dragu v. Motion Picture Indus. Health Plan for Active Participants*, 159 F. Supp. 3d 1121, 1124-25 (N.D. Cal. 2016).

As the declarants supporting Plaintiff's application for fees attest, $650 is a reasonable and prevailing market rate for ERISA litigation specialists with the level of experience and history of results provided by the partners at Bolt Keenley Kim LLP.

Glenn Kantor of the firm Kantor & Kantor LLP, a widely known and well-respected plaintiff's side ERISA lawyer who practices out of the Central District of California, charges $700 per hour for partner level work. Kantor Dec. at ¶ 8. Mr. Kantor has worked directly with Mr. Keenley on multiple occasions and is familiar with his skills and experience, concluding that while he knows "many ERISA attorneys in California with more years of experience than has Mr. Keenley, but none with more talent and expertise. If asked for a referral to an ERISA attorney in Northern California, there is no one I would give a higher recommendation than Mr. Keenley." Kantor Dec. at ¶ 12.

Michelle Roberts Bartolic of the firm Roberts Bartolic LLP is a well known plaintiff's side ERISA lawyer who practices in the Northern District of California. Ms. Roberts is a frequent speaker on ERISA litigation at national conferences, has published

extensively on ERISA issues, and her work has produced a number of prominent ERISA decisions in this district and the Ninth Circuit. Bartolic Dec. at ¶¶ 4-10. Ms. Bartolic has known Mr. Keenley for 10 years and worked directly with him earlier in their respective careers and has direct personal knowledge of the quality of Mr. Keenley and his firm's work. Bartolic Dec. at ¶¶ 11-14.

Daniel Feinberg of the firm Feinberg, Jackson, Worthman & Wasow, LLP is a plaintiff's side ERISA lawyer who has, among other accomplishments, been repeatedly appointed class counsel in some of the most prominent ERISA class actions in the country and whose work produced one of the most cited ERISA opinions in the Ninth Circuit, *Abatie v. Alta Health & Life Ins. Co.* ¸458 F.3d 955 (9th Cir. 2006). Mr. Feinberg has also published numerous articles about ERISA subjects, spoken at many ERISA conferences, and has direct first-hand knowledge of Mr. Keenley's knowledge, training, experience and skill. Feinberg Dec. at ¶¶ 2-10. Mr. Feinberg's current rate is $800 per hour. Feinberg Dec. at ¶ 8.

Ronald Dean is one of the most prominent plaintiff's side ERISA attorneys in California, he has specialized in ERISA cases for 40 years and this work has constituted the bulk of his practice for the last 30 years. Dean Dec. at ¶ 1. He frequently lectures and writes on ERISA issues and has been the trial and appellate counsel over record in 15 Ninth Circuit cases. Dean Dec. at ¶¶ 2-6. Mr. Dean's current rate is $750 per hour. Dean Dec. at ¶ 7.

All of these declarants agree that $650 is a reasonable hourly rate for the services of Mr. Keenley and the other attorneys at his firm and that this rate is consistent with the rates these attorneys charge for their services. Feinberg Dec. at ¶¶ 10-12 ; Kantor Dec. at ¶ 8; Bartolic Dec. at ¶¶ 14-16; Dean Dec. at ¶ 13. Accordingly, Plaintiff counsel's rate is reasonable.

In addition to the recent decisions (discussed above) directly approving Mr. Keenley's rates, the $650 rate sought by Plaintiff's counsel is also consistent with the

rates other courts have found reasonable for partner-level ERISA litigation specialists. For example, in *Echauge v. Metropolitan Life Ins. Co.*, 69 F. Supp. 3d 990, 997 (N.D. Cal. 2014), Judge Orrick found $650 per hour to be a reasonable rate for plaintiff's counsel Rebecca Grey, whose results in ERISA litigation are similar to those obtained by Mr. Keenley and Mr. Kim. Four years ago, in *Oster v. Standard Ins. Co.*, 768 F. Supp. 2d 1026 (N.D. Cal. 2011), Judge Spero found that $600 per hour was a reasonable rate for partner-level ERISA litigation specialists, specifically including Mr. Coleman, and specifically found that Mr. Kim's rate of $400 per hour, who was at that time an associate in Mr. Coleman's firm, was also reasonable. Similarly, in *Caplan v. CNA Financial Corp.*, 573 F. Supp. 2d 1244, 1249 (N.D. Cal. 2008), a decision that is now seven years old, the court approved an hourly rate of $575 for Daniel Feinberg.

### 2. The Hours Expended Were Reasonable and Necessary

As described above, Plaintiff seeks an award reflecting 530.05 hours (with 30 of these hours being estimated time necessary to close out the trial court action), for a total fee award of $344,825. This was a reasonable and necessary amount of time for a case that involves complicated legal and factual issues, a dense administrative record several thousand pages in length, five expert depositions, preliminary motion practice, and major cross motions for judgment combined with a half day court trial on the merits.

Plaintiff prevailed on the most important issues in this case, but prevailing on all issues is not necessary to justify a fully compensatory fee. In *Hensley*, the Supreme Court held that in determining the reasonable time expended for calculation of statutory fees to prevailing plaintiffs, courts should normally award a full compensatory fee encompassing all hours expended on the litigation regardless of how the individual skirmishes that arise in every case resolved:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation, and indeed on some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should

not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason to reducing a fee. The result is what matters.

461 U.S. at 435.

Here Plaintiff obtained excellent results on the merit of his claim. Counsel did not overstaff the case, as it was largely handled by a single attorney with the other attorneys in counsel's firm playing limited supporting roles. Counsel's time is well supported by contemporaneous billing entries, and it was all necessary to the prosecution of the outcome.

Further, Plaintiff's counsel undertook this case on a contingent fee basis and while this should not be factored into the reasonableness of the rates or fees, the Ninth Circuit has acknowledged that counsel working on contingent fee has no incentive to litigate cases inefficiently: "It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. . . By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1113 (9th Cir. 2008).

The total amount of time expended by Plaintiff's counsel is also objectively reasonable and in fact lower than comparable ERISA benefits cases that involved multiple rounds of motion practice and significant discovery. For example, in *Echauge v. Metropolitan Life Insurance Company*, 69 F. Supp. 3d 990, 998 (N.D. Cal. 2014), a disability benefit claim brought under the same provision of ERISA, the court held that 700 hours of attorney time plus 125 hours of paralegal time was reasonable, with only a 10% reduction for inefficiency (thus concluding that 630 hours of attorney time was reasonable).

Plaintiff's litigation costs are also reasonable. The bulk of the costs are accounted

for in discovery, in which experts had to be paid their hourly rates and transcripts needed to be produced. The total cost of the case -- $36,147.02 – is very low compared to the amount at stake in benefits (over $4 million).

Accordingly, Plaintiff should be awarded $344,825 in fees and $36,147.02 in costs pursuant to ERISA § 502(g), 29 U.S.C. 1132(g).

### D. Plaintiff Is Entitled to Recover His Net Benefit Due

The Court has already ordered Prudential to pay Plaintiff's past-due benefits (ECF No. 89), but Defendant has not done this. In the attached form of judgement, Plaintiff seeks and order from the Court requiring payment of a specific amount of money: $1,071,936.00, which reflects the benefits due through the date of hearing. Keenley Dec. at ¶ 3.

### E. Prejudgment Interest Should Be Awarded

Plaintiff requests an award of prejudgment interest on her past-due benefits at an annual rate of 14.75%. This rate is based on Prudential's average annual return on equity, as reported by Prudential in its annual report to shareholders, between 2013 and 2016. Between the time Prudential terminated Plaintiff's claim in July 2013 and the date of hearing on this motion, $377,015.96 in interest accrued on the unpaid benefits. Keenley Dec. at ¶ 20.

Awards of pre-judgment interest in ERISA cases are committed to the discretion of the district court. *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163-64 (9th Cir. 2001). The Ninth Circuit has held that a district court has the discretion to award interest at a rate it deems appropriate in the particular case, based on the considerations of fairness and balancing the equities. *Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 628 (9th Cir. 2007).

Basic fairness and the equities of this case support an award of 14.75% interest because this would best restore the parties to where they would have been but for Prudential's illegal conduct. Prudential enjoyed windfall investment returns as a result

of its retention of Mr. Doe's benefits during a time period in which Prudential's investments performed exceptionally well, averaging an 14.75% annual return on equity from 2013-2016.  Prudential should not be permitted to financially benefit from its illegal conduct, and requiring prejudgment interest consistent with Prudential's investment returns will fulfill that end.

In addition to Prudential's windfall, Plaintiff has suffered financial losses as a result of Prudential's illegal conduct.  Plaintiff maintains significant assets invested in public equities and private investment opportunities.  Doe Dec. at ¶¶ 4-5; Declaration of Richard Singer at ¶ 3; Declaration of Adam Berman at ¶¶ 3-5.  Because Prudential's termination of his benefit resulted in a significant loss of income that previously was used for Plaintiff's day-to-day financial needs, Mr. Doe had to draw down significant savings to support his day-to-day needs after Prudential terminated his claim in 2013.  Doe Dec. at ¶ 4; Berman Dec. at ¶ 5.  This caused Plaintiff to pursue a more conservative investment strategy since 2013 than he otherwise would have, a time period that corresponds with a period of significant growth in equity and alternative investments.  Doe Dec. at ¶¶ 4-5.  Between July 2013 and the present Plaintiff's equity portfolio has generated an average annual return of 11.54% and his family investment fund has provided an average annual return of 11.25%.  Singer Dec. at ¶ 4; Berman Dec. at ¶ 3. Plaintiff would have invested more money in both portfolios if his disability benefits had continued without interruption.  Doe Dec. at ¶ 5.  Accordingly, a prejudgment interest rate of approximately 11.5% would be necessary to compensate Plaintiff for his lost income.

At a minimum, Plaintiff should be awarded 10% prejudgment interest. 10% is the rate prescribed by section 10111.2 of the California Insurance Code as the rate an insurer must pay when payment of a benefit is withheld longer than 30 days after the insurer had the evidence necessary to justify the claim.

Insurance code section 10111.2 is not binding on the Court, and Plaintiff is not

seeking to enforce the insurance code directly, but it is evidence of what the state legislature has long considered a reasonable rate to compensate insureds for late payment of claims and numerous courts in ERISA cases have exercised their discretion to award prejudgment interest at the rates set by state insurance codes (some of which are much higher than 10%) when the circumstances justified such an award. *See, e.g. Arnett v. Hartford Life and Acc. Ins. Co.*, 2006 WL 5781982, *5 fn. 6 (C.D. Cal. Dec. 19, 2006) (adopting the rate of prejudgment interest under Cal. Ins. Code § 10111.2 on the grounds that Hartford denied the claimant the opportunity for a full and fair review of his claim by applying the wrong occupational standard and unreasonably concluding that the claimant could perform the essential duties of his position).   In other circuits, courts have adopted the rates set by state statutes that are analogous to section 10111.2. *See Radford Trust v. First Unum Life Ins. Co. of Am.*, 321 F.Supp.2d 226, 258 (D. Mass. 2004) (applying Massachusetts state law rate at 12%); *Allison v. Bank One-Denver*, 289 F.3d 1223, 1243-44 (10th Cir. 2002) (applying Colorado state law rate at 8%); *Nightingale v. Blue Cross/BlueShield of Ala.*, 41 F.3d 1476, 1484 (11th Cir. 1995) (applying Alabama state law rate at 18%); *Smith v. American Int'l Life Assur. Co. Of N.Y.*, 50 F.3d 956, 958 (11th Cir. 1995) (applying Georgia state law rate at 12%); *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1030-32 (4th Cir. 1993) (applying Virginia state law rate at 12%); *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 984 (5th Cir. 1991) (applying Texas state law rate at 10%).

Under these circumstances, an award of 14.75% prejudgment interest is justified, it is the best proxy to restore the parties to the position they would have been in but for Prudential's unlawful conduct, it is the best way to make Plaintiff whole for his losses, and it is the only way to make sure Prudential does not profit from the unlawful conduct.

### F.  Plaintiff's Entitlement to Future Benefits

Plaintiff is informed that Defendant intends to challenge some aspects of the Court's order regarding Plaintiff's entitlement to future benefits.  Plaintiff is not familiar

with the details of Defendant's arguments and will reserve argument until such time as counsel has had an opportunity to review and consider Defendant's position.  However, as an initial matter, ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), explicitly authorizes the Court to "clarify [a participant's] rights to future benefits under the terms of the plan."  In this case, Mr. Doe's disability was not disputed, only its cause was disputed, and that issue has been resolved fully in Plaintiff's favor.  Under these circumstances, Plaintiff believes it is appropriate for the Court to order Defendant to pay Mr. Doe's benefit until he reaches the maximum age without further invasive medical inquiry.

### G. Request for Entry of Judgment

Plaintiff has concurrently filed a proposed form of judgment.  This form of judgment would order Defendant to pay the amounts set forth above.  Plaintiff requests, pursuant to Rule 58, that the Court direct the Clerk to enter this judgment and close the case.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment requiring Prudential to pay $344,825 in attorney's fees, $36,147.02 in case costs, $1,071,936 in past-due benefits, and $377,015.96 in prejudgment interest thereon.

Respectfully Submitted,

By:    /s/ James P. Keenley
       James P. Keenley
       Bolt Keenley Kim LLP
       Attorneys for Plaintiff